**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division**

|  |  |
|---|---|
| **GREGORY E. SCHOENBORN, Individually and as Personal Representative of the Estate of Martha Stringer Schoenborn, Deceased**  )<br>)<br>)<br>)<br>)<br>) | |
| **Plaintiff,**  ) | |
| ) | |
| **v.**  ) | **CIVIL ACTION NO. 07-CV-544(RMU/JMF)** |
| ) | |
| **WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY**  )<br>)<br>) | |
| **Defendant.**  )<br>) | |

**PLAINTIFF'S (1) MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO KIMBERLY PIFER'S MOTION TO INTERVENE
AND (2) REQUEST FOR ORAL HEARING**

Regrettably, Kimberly Pifer's counsel are bringing this motion for no other reason than—for lack of better terminology—to "hijack" this litigation. Having previously tried, and failed, to get Ms. Pifer named as co-administrator of Martha Schoenborn's estate, Ms. Pifer's counsel now seek to inject themselves into this case through intervention. Realizing that their motion is meritless, Ms. Pifer's counsel create "concerns" where none exist and "rely" on numerous demonstrably false and misleading statements of fact and false statements of law in order to obtain their goal. Never have Ms. Pifer's counsel complained that Mr. Schoenborn or his counsel were doing anything other than protecting Ms. Pifer's interests.

The Court should deny the motion because Ms. Pifer's counsel fail to meet their burden of showing (1) that Ms. Pifer's interests will be impaired if she is not permitted to intervene, and

(2) that Gregory[1] Schoenborn, who represents Ms. Pifer as her fiduciary, will not adequately protect those interests. In fact, as demonstrated herein, literally nothing could be further from the truth.

## FACTUAL BACKGROUND

On the evening of February 14, 2007, Gregory Schoenborn's beloved wife, Martha Schoenborn, was tragically struck and killed by a Washington Metropolitan Area Transit Authority ("WMATA") Metrobus. As a result of his deep personal loss, Mr. Schoenborn has chosen to vindicate Mrs. Schoenborn's tragic death. On March 6, 2007, after interviewing numerous recommended attorneys, Mr. Schoenborn retained undersigned counsel to handle the claims arising out of his wife's death.

By letter dated March 7, 2007, in accordance with black letter Virginia law,[2] Mr. Schoenborn's counsel notified the probate clerk of the Circuit Court for the City of Alexandria, Virginia that Mr. Schoenborn sought to be appointed as the administrator of Martha Schoenborn's estate (the "Estate"). Mr. Schoenborn was appointed the administrator of the Estate on March 19, 2007, and properly identified Ms. Pifer—his wife's 36-year-old daughter by a previous marriage—as a statutory beneficiary. Later that same day, Mr. Schoenborn filed the complaint initiating this lawsuit. The complaint alleges two separate causes of action—a survival action and a wrongful death action—and specifically identifies Kimberly Pifer as a beneficiary of the litigation. (Compl. ¶ 4.) Mr. Schoenborn has dutifully fulfilled each and every obligation as the administrator—he has identified the Estate, obtained an inventory and appraisal,

---

[1] Mr. Schoenborn's first name is Gregory; Ms. Pifer's counsel erroneously refer to him as "George" throughout their motion and accompanying memorandum.

[2] *See* Va. Code Ann. § 64.1-118(A)(2) (2007).

and filed his first inventory.  He has also dealt with creditors of the Estate, as well as Ms.

Schoenborn's employer regarding death and other benefits.

Contrary to the assertions of Ms. Pifer's counsel,[3] Mr. Schoenborn's counsel personally

gave Ms. Pifer prior notice that Mr. Schoenborn intended to file suit, having spoken with her by

telephone in early March 2007.  (Declaration of Peter C. Grenier ("Grenier Decl.") ¶ 4.)

Undersigned counsel then mailed a copy of the complaint to Ms. Pifer the same day it was filed,

and enclosed a cover letter urging Ms. Pifer to contact him if she ever had any questions

regarding the case.  *See* Letter from Peter C. Grenier to Kimberly Pifer (March 19, 2007)

(Grenier Decl. Ex. 1).

On March 27, 2007, Ms. Pifer's counsel wrote a letter to undersigned counsel claiming

that Ms. Pifer wanted to be named as a "co-Personal Representative of the Estate."  *See* Letter

from Julie H. Heiden to Peter C. Grenier (March 27, 2007) (Grenier Decl. Ex. 2).  Ms. Pifer's

counsel and Mr. Schoenborn's counsel spoke on the telephone regarding Ms. Pifer's desire to be

named co-personal representative on or about April 5, 2007, and again on or about April 11,

2007.  *See* Letter from Peter C. Grenier to Julie H. Heiden (April 11, 2007) (Grenier Decl. Ex.

3).  Ms. Pifer's counsel initially told Mr. Schoenborn's counsel that Ms. Pifer had retained their

firm solely because Ms. Pifer wanted to see "changes" made within WMATA, and that Bill

Lightfoot supposedly had political "connections" in the District that could make these changes

happen.  *Id*; *see also* Letter from Peter C. Grenier to Julie H. Heiden (April 12, 2007) (Grenier

Decl. Ex. 5).

---

[3] "Ms. Pifer did not receive prior notice that George [sic] Schoenborn sought to be appointed
personal representative nor did she receive prior notice that a lawsuit was being filed on his
behalf and the behalf of the estate."  Mem. of Points and Auth. in Supp. of Kimberly Pifer's
Partial Consent Mot. to Intervene ("Mem. in Supp.") 3-4.

Mr. Schoenborn's counsel responded that Mr. Schoenborn was also committed to seeing changes made at WMATA, but did not see how pursuing political change required Ms. Pifer to be named as a co-personal administrator of the Estate. *Id.* In an effort to assure Ms. Pifer's counsel that her client's interests were being represented with respect to her civil claims, Mr. Schoenborn's counsel detailed all the steps he had already taken in furtherance of this litigation. Ms. Pifer's counsel lauded Mr. Schoenborn's counsel for having aggressively pursued the civil action on behalf of the Estate. (Grenier Decl. ¶ 8.)

Mr. Schoenborn's counsel also repeatedly offered to keep Ms. Pifer fully informed about all aspects of the litigation, and even offered to allow Ms. Pifer to review any settlement packages before they were submitted to WMATA. Puzzlingly, Ms. Pifer's counsel rejected these offers, stating only that Ms. Pifer wanted to be "more actively involved in the day-to-day decision making" in the litigation. At this point, it became apparent that the earlier claims made by Ms. Pifer's counsel that they had been retained solely "to pursue political change" were bogus and pre-textual. When asked directly whether their law firm would try to become involved in this litigation if Ms. Pifer was named co-personal representative, Ms. Pifer's counsel admitted that was their intention. (Grenier Decl. Ex. 3.) Needless to say, it was shocking to learn that Ms. Pifer's counsel had historically misled undersigned counsel.

On April 11, 2007, Mr. Schoenborn's counsel sent a letter to Ms. Pifer's counsel memorializing their earlier conversations. In the letter, Mr. Schoenborn's counsel "reiterate[d] [his] previous offer to keep [Ms. Pifer] fully apprised to whatever reasonable extent she desires," and further "offered to confirm in writing that [he] would not even <u>submit</u> a proposed settlement package to WMATA unless it were first reviewed by Kim." *Id.* (emphasis in original). Ms. Pifer's counsel, however, <u>again</u> rejected these offers and merely repeated the assertions that Ms.

Pifer—and their firm—"want[ed] to be involved in the decision making aspects of this case" and "desire[d] to be an active participant in the prosecution of this lawsuit." Letters from Julie H. Heiden to Peter C. Grenier (April 12, 2007) (Grenier Decl. Ex. 4 & Ex. 6).

On April 18, 2007, with barely a week's notice of a hearing to Mr. Schoenborn, Ms. Pifer's counsel filed a Petition for Appointment as Co-Administrator in the Circuit Court for the City of Alexandria, Virginia. (Grenier Decl. Ex. 7.) The petition cited Ms. Pifer's ignorance of Virginia law as the sole basis for her failure to notify the probate clerk of her desire to seek appointment as an administrator—notably however, she had already been in consultation with legal counsel during the requisite 30-day time period for submitting such notification. No where in the current motion do Ms. Pifer's counsel explain why they failed to advise her in this respect.

Noting that the law could not be clearer against Ms. Pifer's position, the court denied the petition at a hearing held on June 13, 2007. There was simply no legal basis under Virginia law to name Ms. Pifer as a co-administrator of the Estate, and her counsel just ignored the law. *See* Hr'g Tr. 7 (Grenier Decl. Ex. 8). Importantly, never in that proceeding did Ms. Pifer's counsel even hint that Ms. Pifer's interests were not being protected, because such an assertion would be patently false.

Even after the court denied Ms. Pifer's petition, Mr. Schoenborn's counsel again represented to Ms. Pifer's counsel and to the court that he would not submit any settlement package to WMATA without Ms. Pifer's consent, stating:

> I've offered and I'll continue to say before this court reporter that before we submit any settlement package at all, we would do it in full consultation with Ms. Pifer through her counsel and will not submit anything until she is in full agreement.

*Id*. at 8-9.

Having had their petition for Ms. Pifer to be named co-administrator denied, her counsel now seek intervention as an end-run around the adverse ruling in Virginia.  Presumably, if Ms. Pifer's counsel truly thought her interests were not being protected, they would have sought removal of Mr. Schoenborn for cause, or sought intervention in this case.  Nothing has changed but the clothing in which they are dressing the same request.

## ARGUMENT

This case involves two claims: (1) a survival action brought by Mr. Schoenborn on behalf of the Estate, as its legal representative, and (2) a wrongful death action brought by Mr. Schoenborn on behalf of himself and Ms. Pifer, in his capacity as the personal representative of the Estate.  Ms. Pifer "seeks to intervene as a matter of right pursuant to Federal Rule of Civil Procedure 24(a) . . . . in both the survival and wrongful death actions."  (Mot. to Intervene 1.)

In order to intervene under Federal Rule of Civil Procedure 24(a), Ms. Pifer must demonstrate (1) that she possesses standing under Article III of the United States Constitution to become a plaintiff in the action; (2) that she possesses an interest in the litigation; (3) that her interest would be impaired if intervention is denied; and (4) that current parties in the litigation do not adequately represent her.  *See Jones v. Prince George's County*, 348 F.3d 1014, 1017 (D.C. Cir. 2003); *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003).  As set forth below, intervention must be denied because Ms. Pifer fails to meet these requirements.

With respect to her proposed intervention in the Estate's survival action, there is no legal basis for intervention because, as a matter of law, Ms. Pifer does not have either an interest in the Estate's claim or Article III standing.  With respect to the wrongful death action, Ms. Pifer does have standing and an interest, however, intervention should still be denied because her interest

will not be impaired and because Mr. Schoenborn adequately represents Ms. Pifer as her

fiduciary.

## I.    LEGAL BACKGROUND ON SURVIVAL ACTIONS AND WRONGFUL DEATH ACTIONS IN THE DISTRICT OF COLUMBIA.

As a preliminary matter, although Ms. Pifer's memorandum in support of the motion to

intervene contains a purported "Overview of the District of Columbia Wrongful Death and

Survival Actions," this "overview" is rife with misleading and erroneous statements of law that

mandate correction.

Under District of Columbia law, negligent conduct that results in death gives rise to two

independent rights of action—a survival claim and a wrongful death claim.  *Semler v.*

*Psychiatric Inst. of Washington, D.C.*, *Inc.*, 575 F.2d 922, 924 (D.C. Cir. 1978).  The two actions

redress different and distinct injuries: The survival action compensates the decedent's <u>estate</u> for

losses the decedent suffered; the wrongful death action compensates the decedent's family for

the separate losses they suffered as a result of the decedent's death.  *Runyon v. District of*

*Columbia*, 463 F.2d 1319, 1321 (D.C. Cir. 1972).

The District of Columbia Survival Statute is designed to preserve the claims the decedent

would have possessed if she had not died.  D.C. Code § 12-101 (2007); *Semler*, 575 F.2d at 925.

Accordingly, the claim is brought by the legal representative of the decedent "for the benefit of

the deceased's estate."  *Semler*, 575 F.2d at 925.  The measure of damages in a survival action

"is based on the probable net future earnings reduced by the amount [the] deceased would have

used to maintain [her]self and those entitled to recover under the Wrongful Death Act," *id.*, and

any pain and suffering the deceased experienced before her death.  *Graves v. United States*, 517

F. Supp. 95, 99 (D.D.C. 1981).  Thus, Ms. Pifer's counsel misstate the law when they claim that

an award on the Estate's survival claim would be "compensation for her [Ms. Pifer's] injuries."

(Mem. in Supp. 4.)  Any award made on a survival claim is the property of the estate and is thereafter distributed to the decedent's heirs according to her will or the applicable intestacy laws.  *Lewis v. Lewis*, 708 A.2d 249, 252 (D.C. 1998).

In contrast, the District of Columbia Wrongful Death Act "creates an entirely new right of action in favor of designated beneficiaries."  *Semler*, 575 F.2d at 925.  The measure of damages in a wrongful death action is the expected "maintenance or assistance [the claimant] would have received from the deceased had [s]he lived."  *Id.*; *see also* D.C. Code § 16-2701(b) (2007).  Damages for loss of consortium or the pain and suffering that a survivor experiences as a result of the decedent's death are not recoverable under the Wrongful Death Act.  *Runyon*, 463 F.2d at 1322 (D.C. Cir. 1972); *Saunders v. Air Florida, Inc.*, 558 F. Supp. 1233, 1235 (D.D.C. 1983).  Ms. Pifer's counsel again misstate the law when they claim that an award in this litigation would compensate Ms. Pifer for the loss of her mother's "emotional support."  (Mem. in Supp. 6.)

The <u>only</u> proper plaintiff who may bring a wrongful death action is the personal representative of the estate.  D.C. Code § 16-2702 (2007); *Group Health Assoc. v. Gatlin*, 463 A.2d 700, 701 (D.C. 1983) ("[T]he District's wrongful death statute does not create a right of action in anyone but the personal representative.").  This requirement preserves efficiency and judicial resources by preventing the chaos that would ensue if multiple beneficiaries conducted duplicative and concurrent litigation.

The personal representative pursues the claim on behalf of all the beneficiaries under the Wrongful Death Act, and has a fiduciary duty to represent the interests of those beneficiaries.  *See Estate of Green v. Loewinger*, 912 A.2d 1198, 1209 (D.C. 2006) ("In the District of Columbia, a personal representative owes a fiduciary duty to the estate and its beneficiaries.")

(citation and internal quotation marks omitted); *see also Kitchen v. Throckmorton*, 223 Va. 164, 172 (Va. 1982) (same holding under Virginia law).

Any award in a wrongful death action does not pass through the estate, but is made to the personal representative for the benefit of each of the beneficiaries. *See Jones v. Fondufe*, 908 A.2d 1161, 1164 (D.C. 2006). The award is distributed to the beneficiaries according to an allocation that is made by the jury based on their determination of the injuries each beneficiary has individually suffered; if for some reason no allocation is specified, the award is allocated "according to the provisions of the statute of distribution in force in the District." D.C. Code § 16-2703 (2007). Under the District of Columbia distribution statute, Mr. Schoenborn and Ms. Pifer would share equally in any unallocated award. *See* D.C. Code § 19-302(5) (2007). Thus, Ms. Pifer's counsel <u>again</u> misstate the law when they claim that "if no allocation is made she is entitled to two-thirds" of the wrongful death award. (Mem. in Supp. 4.) As an aside, no where in the motion does Ms. Pifer, an emancipated adult living in North Carolina, even describe the categories of her provable damages under the Wrongful Death Act.

If the personal representative settles a wrongful death claim short of trial, the "personal representative has a fiduciary duty to bargain for the rights of all the decedent's beneficiaries and to turn over to them their appropriate share of any proceeds." *Alcabasa v. Korean Air Lines Co.*, 62 F.3d 404, 408 (D.C. Cir. 1995).

Failure to represent the interests of the beneficiaries, either at trial or in a settlement, "give[s] rise to a cause of action against the personal representative" for breach of fiduciary duty. *Id.*; *see also* D.C. Code § 20-743 (2007) ("If any personal representative's exercise of power concerning the estate is improper, such representative is liable for breach of fiduciary duty to interested persons for resulting damage or loss . . ."); *Kitchen*, 223 Va. at 172 (same).

**II.    THE COURT MUST DENY INTERVENTION IN THE SURVIVAL ACTION
BECAUSE MS. PIFER HAS NO STANDING TO INTERVENE IN THE ACTION
UNDER ARTICLE III OF THE UNITED STATES CONSTITUTION, AND
<u>BECAUSE SHE HAS NO LEGAL INTEREST IN THE ACTION.</u>**

As a threshold requirement for intervention under Rule 24(a), Ms. Pifer must demonstrate
that she has both standing under Article III of the United States Constitution and an interest in
the litigation. *Jones*, 348 F.3d at 1016. In order to establish Article III standing, "[a] plaintiff
must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and
likely to be redressed by the requested relief." *Hein v. Freedom From Religion Foundation, Inc*.,
__ U.S. __, 168 L. Ed. 2d 424, 437 (2007) (citation omitted).

As explained above, a survival action is designed to redress personal injuries sustained by
the decedent, not the decedent's heirs. Indeed, the measure of damages in a survival action
explicitly <u>excludes</u> any sums the decedent would have used to support and maintain her children.
*See Semler*, 575 F.2d at 925. Accordingly, Ms. Pifer does not have any standing with respect to
the survival claim, because the requested relief would not redress the injuries that she has
suffered.

Ms. Pifer's counsel rely solely on *Jones* for their claim that Ms. Pifer has standing in this
action. (Mem. in Supp. 5-6.) Importantly, the proposed intervenor in *Jones* sought to intervene
only with respect to the wrongful death claim and specifically chose not to intervene in the
simultaneous survival action. *See Jones v. Prince George's County*, 202 F.R.D. 39, 41 (D.D.C.
2001). The memorandum in support of intervention does not cite any authority for the
proposition that Ms. Pifer has standing to intervene in the Estate's survival action, for the simple
reason that there is none.

Additionally, the courts have specifically held in the context of requests for intervention
under Rule 24(a) that a decedent's heirs do not have an interest in the estate's survival action. In

*Purnell v. Akron*—a case heavily relied upon by Ms. Pifer's counsel and cited extensively in their supporting memorandum—the court agreed with the personal representative of the estate that "there is no impairment of [any] interest by denying intervention [in a survival claim] because the true beneficiary of this action is the estate." 925 F.2d 941, 948 (6th Cir. 1991). Accordingly, the repeated arguments made by Ms. Pifer's counsel in their memorandum about Ms. Pifer's "interest" as an heir of the Estate are red-herrings.[4]

Because Ms. Pifer has neither standing nor an interest in the Estate's survival action, intervention is *per se* impermissible and must be denied with respect to that claim.

### III.    THE COURT MUST ALSO DENY INTERVENTION IN THE WRONGFUL DEATH ACTION BECAUSE MS. PIFER'S INTEREST IN THAT ACTION WILL NOT BE IMPAIRED, AND BECAUSE SHE HAS FAILED TO REBUT THE PRESUMPTION THAT MR. SCHOENBORN WILL ADEQUATELY REPRESENT HER INTEREST IN THAT ACTION.

There is no dispute that Ms. Pifer has both standing and an interest in the litigation of the wrongful death claim. Indeed, Mr. Schoenborn named Ms. Pifer in the complaint as a beneficiary in this action. (Compl. ¶ 4.) However, intervention is not appropriate. Ms. Pifer's interest will not be impaired if intervention is denied. Moreover, there is a presumption that Mr. Schoenborn will adequately protect Ms. Pifer's interest, and she has failed to rebut that presumption by demonstrating that Mr. Schoenborn's representation of her is somehow inadequate.

### A.    *Ms. Pifer Will Be Actively Involved in the Litigation, and Her Interest Will Not Be Impaired.*

Ms. Pifer's interest simply will not be impaired if intervention is denied and her counsel offer nothing—other than empty rhetoric—to support that bold assertion. Mr. Schoenborn's

---

[4] *See, e.g.*, Mem. in Supp. 3 ("According to Virginia law, Ms. Pifer will receive two-thirds of Mrs. Schoenborn's estate."); *id*. at 4 ("Under D.C. law, Ms. Pifer is entitled to two-thirds of the any [sic] proceeds that are awarded under the survival action."); *id*. at 8 ("[I]t is Ms. Pifer who stands to inherit the vast majority of the estate and not Mr. Schoenborn.").

counsel has repeatedly committed—both verbally and in writing—that he would keep Ms. Pifer fully informed about the litigation as it proceeds.  Ms. Pifer's counsel, realizing that they have no factual basis for claiming that Ms. Pifer's interest will be impaired, have resorted to making whatever blatantly false assertions they can in a desperate attempt to obtain intervention.

First, Ms. Pifer's counsel claim that "[i]f Ms. Pifer is not permitted to intervene[,] the judgment and the jury's allocation would rest solely on the evidence presented by Mr. Schoenborn[,] which would create an unjust and unbalanced judgment."  (Mem. in Supp. 8.)  This is completely false.  Neither Mr. Schoenborn nor his counsel have _ever_ made _any_ suggestion to Ms. Pifer or her counsel that if this case were to go to trial Ms. Pifer would not be given the full opportunity to testify and present evidence about the damages she has suffered as a result of her mother's death.  Indeed, Mr. Schoenborn specifically identified Ms. Pifer in Plaintiff's Initial Disclosures that were filed on July 3, 2007.  To remove any possible doubt, undersigned counsel now represents to the Court that Ms. Pifer will be given the opportunity to testify at any trial or hearing, and that Mr. Schoenborn will present a vigorous case on behalf of her claim.  Clearly he has every obvious incentive, as well as a fiduciary obligation, to do so.

Second, Ms. Pifer's counsel state that "[i]t is equally concerning that Ms. Pifer will not be able to take any part in any settlement negotiations if she is not allowed to intervene in this action."  (Mem. in Supp. 9.)  This too is utterly false, and undersigned counsel has _serious_ ethical concerns about the complete lack of candor by Ms. Pifer's counsel in making such an irresponsible statement.  Mr. Schoenborn's counsel has _repeatedly_ stated that he would not submit—let alone negotiate—a settlement in this litigation without Ms. Pifer's consultation and agreement.  Indeed, just last month undersigned counsel made this offer to Ms. Pifer's counsel _on the record_ in the Circuit Court for the City of Alexandria, Virginia:

> **I've offered and I'll continue to say before this court reporter that before we submit any settlement package at all, we would do it in full consultation with Ms. Pifer through her counsel and will not submit anything until she is in full agreement.**

Hrg. Tr. at 8-9. How much clearer could Mr. Schoenborn be, and how much more disingenuous could Ms. Pifer's counsel be to this Court?

Given that Ms. Pifer will be fully involved in any trial or settlement decision, her interests cannot possibly be impaired if intervention is denied, and her counsel offers no rational argument to the contrary.

**B.     *Mr. Schoenborn Adequately Represents Ms. Pifer's Interest as Her Fiduciary and Personal Representative of the Estate.***

Even if Ms. Pifer's interest in the wrongful death action would be impaired by denying intervention, her counsel have failed to meet their burden of demonstrating that Mr. Schoenborn does not already adequately represent her interest in this case. Their speculative and unsupported allegations of a conflict between Ms. Pifer and Mr. Schoenborn are pure fantasy and wholly insufficient to rebut the presumption that Mr. Schoenborn will adequately represent Ms. Pifer.

"The original burden of showing inadequate representation rests on the applicant for intervention." *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986); *Purnell*, 925 F.2d at 949 ("The proposed intervenors bear the burden of demonstrating inadequate representation."). There is a presumption of adequate representation when the party already in the suit has the same ultimate goal as the proposed intervenor. *E.g.*, *United Sates v. Georgia*, 19 F.3d 1388, 1394 (11th Cir. 1994) ("We presume that a proposed intervenor's interest is adequately represented when an existing party pursues the same ultimate objective as the party seeking intervention."); *Moosehead Sanitary Dist. v. S.G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir. 1979) ("Where the party seeking to intervene has the same ultimate goal as a party already

in the suit, courts have applied a presumption of adequate representation."); *cf. League of United Latin Am. Citizens Council v. Clements*, 884 F.2d 185, 189 (5th Cir. 1989) (same holding in the context of permissive intervention under Fed. R. Civ. P. 24(b)(2)); *Vale Prop., Ltd. v. Canterbury Tales, Inc.*, 431 A.2d 11, 15 (D.C. 1981) (same holding in the context of intervention as of right under Super. Ct. Civ. R. 24(a)(2)).

Mr. Schoenborn's ultimate goal in this litigation is exactly the same as Ms. Pifer's—to maximize the amount of damages the defendant must pay for negligently killing a loving wife and mother.[5]  Indeed, Mr. Schoenborn has been diligent and aggressive in pursuing that goal.  To date, Mr. Schoenborn's counsel have already: gathered pertinent documents and records; hired investigators; reviewed numerous photographs and video recordings related to the incident; retained numerous experts, including a forensic economist, a forensic pathologist, a neurologist, and an accident reconstructionist; liaised with the Federal Trade Commission, Mrs. Schoenborn's last former employer, for employment benefits and retirement benefits information; attended related criminal proceedings; ordered and reviewed transcripts of related criminal proceedings; obtained and reviewed autopsy photographs; propounded discovery; requested additional records from various governmental entities; and other tasks too numerous to list.

Ms. Pifer's counsel attempt, however, to manufacture a false conflict in this case by claiming that "Mr. Scheonborn [sic] and Ms. Pifer are in competition, each wanting to receive the largest part of the allocation possible" and that "Ms. Pifer's interest to maximize her recovery in this litigation" is in conflict with Mr. Schoenborn's "own interests in obtaining maximum recovery for himself."  (Mem. in Supp. 11.)  This purported conflict is illusory, and these

---

[5] Although Mr. Schoenborn would also like to see changes made at WMATA, that is not recoverable relief in a wrongful death action.

allegations make it regrettably clear that Ms. Pifer's counsel are the prime movers here, not Ms. Pifer.

There is no statutory cap that limits the amount of the potential award on the wrongful death claim, and Mr. Schoenborn and Ms. Pifer are not competing for a fixed sum of money. The jury will be free to award both Mr. Schoenborn and Ms. Pifer their full and complete recovery at trial. The fact that the awards to Mr. Schoenborn and Ms. Pifer will be based on their individual relationships to Mrs. Schoenborn does not create a conflict or establish that Mr. Schoenborn's representation of Ms. Pifer is somehow inadequate. *See Vale Prop.*, 431 A.2d at 15 ("[A] slight difference in interests between the applicant and the supposed representative will not suffice to show inadequacy of representation.") (citation and internal quotation marks omitted).

These speculative assertions of a theoretical conflict, without some evidence of actual conflict between Mr. Schoenborn and Ms. Pifer, are insufficient to satisfy the burden of establishing that Mr. Schoenborn's representation would be inadequate. *See Moosehead*, 610 F.2d at 54 ("[T]he petitioner must produce something more than speculation as to the purported inadequacy."); *see also League of Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1307 (9th Cir. 1997) (holding that assertions that interests might diverge in the future does not justify intervention); *cf.*, *Clements*, 884 F.2d at 189 (holding that the intervenor must "produce something more than speculation" in order to rebut the presumption of adequacy).

Taken to its ultimate conclusion, the argument of Ms. Pifer's counsel is that any beneficiary is entitled to intervention based solely on speculation that he or she might have some future conflict with the personal representative. This <u>cannot</u> be the law. Indeed, as the two cases cited in Ms. Pifer's own supporting memorandum reveal, it <u>is</u> <u>not</u> the law. In both of those cases,

the courts permitted intervention only after finding some evidence of <u>actual</u> animosity or conflict between the personal representative and the proposed intervenor that suggested the personal representative would not zealously advocate the intervenor's interests.

*Purnell* involved a conflict between the decedent's legitimate and illegitimate children. 925 F.2d at 942. The dispute became so contentious that the state probate court appointed an independent personal administrator to represent the estate and the beneficiaries in the survival and wrongful death claims. *Id.* at 943. Because the paternity of the illegitimate children had not been established, the Sixth Circuit Court of Appeals reasoned that the personal representative of the estate "ha[d] no interest in representing the would-be intervenors until paternity [wa]s proved, and though appearing neutral, he could be considered their opponent." *Id.* at 950. Moreover, the court found evidence that the personal administrator was not, in fact, neutral and that he actually favored the legitimate heirs over the illegitimate heirs. *Id.* at n.7.

In *Fondufe*, the father of the decedent had been named as the personal representative of the estate; the proposed intervenor was the decedent's mother and ex-wife of the personal representative. 908 A.2d at 1164. The former couple had a history of "acrimonious relations," and the District of Columbia Court of Appeals found "indications that this acrimony may have influenced [the administrator's] conduct of the litigation to the [intervenor's] detriment." *Id.* For example, unlike in this case where Mr. Schoenborn <u>named</u> Ms. Pifer as a beneficiary in the complaint and has unilaterally kept her <u>fully</u> apprised every single step of the way, the personal representative in *Fondufe* initially identified only himself, and after his ex-wife sought to intervene, he amended the complaint to include only unspecified "others." *Id.*

In this case there is <u>no</u> acrimony or actual conflict between Mr. Schoenborn and Ms. Pifer, nor is there a scintilla of evidence that Mr. Schoenborn will not zealously advocate Ms.

Pifer's interest in this litigation. He loves her very dearly, and Ms. Pifer's direct communications with Ms. Schoenborn reveal the feelings are mutual. This is not the appropriate forum to discuss the details of the private and intimate exchanges between Mr. Schoenborn and Ms. Pifer, but suffice it to say there is zero acrimony, other than the heartache associated with having to deal with Ms. Pifer's counsel. Indeed, Mr. Schoenborn sent flowers to Ms. Pifer on Mother's Day.

In reality, Ms. Pifer's counsel do not truly believe that Mr. Schoenborn will not adequately represent Ms. Pifer. They have made explicitly clear their true purpose for seeking intervention is to become "active participant[s] in the prosecution of this lawsuit" and become "involved in the decision making aspects of this case." This is not a basis for intervention, and the motion should be denied. *See Jones*, 348 F.3d at 1020 ("If disagreement with an existing party over trial strategy qualified as inadequate representation, the requirement of Rule 24 would have no meaning.") (citation omitted). The Court can draw its own conclusions about the motivations of Ms. Pifer's counsel.

## IV.    PERMITTING INTERVENTION MAY BE DETRIMENTAL TO THE ESTATE.

Not only is intervention legally impermissible but, as a practical matter, permitting Ms. Pifer's counsel to become "active participant[s] in the prosecution of this lawsuit" and "involved in the decision making aspects of this case" would be detrimental to the Estate. As explained above, Ms. Pifer does not have any basis whatsoever for becoming involved in the litigation of any issues related to the survival action. With respect to the wrongful death claim, Ms. Pifer's counsel do not dispute that Mr. Schoenborn has already done a laudatory job prosecuting the case; Ms. Pifer's counsel seemingly seek intervention only for the narrow purpose of presenting a case on Ms. Pifer's individual damages in the wrongful death action. However, Mr. Schoenborn's counsel have already represented to Ms. Pifer and to the Court that Ms. Pifer will

be able to present her damages at trial and will be invited to participate in any settlement mediation.  This begs the question:  Why have Ms. Pifer's counsel brought this motion to intervene?

The previous statements made by Ms. Pifer's counsel about their broad desire to be "active participants" in the "decision making" in this case make clear that they intend to use any intervention—no matter how narrow or limited—to bootstrap themselves into <u>all</u> aspects of this litigation, despite the fact that they have no basis to do so.  With all due respect to Ms. Pifer's counsel, undersigned counsel does not, at this or any other juncture, welcome other attorneys' input on litigation strategy or trial tactics, and undersigned counsel has already invested literally thousands of dollars in this case on investigation, retaining experts, and the like.  Uninvited and unsolicited interference could jeopardize the ultimate outcome.

Mr. Schoenborn's counsel have been diligent and aggressive in moving this litigation forward.  To permit Ms. Pifer's counsel to become "involved in the decision making aspects of the case"—or, in other words, to revisit and second-guess each decision of Mr. Schoenborn's counsel—would bring this litigation to a screeching halt.  This would be seriously detrimental to the Estate's prosecution of its survival action.  Plaintiff cringes at the notion of there ever being a stalemate between the two.

The only proper role for Ms. Pifer and her counsel at this point in the litigation is to observe and monitor the proceedings as a non-party.  At the appropriate time—either before trial or, as applicable, during settlement discussions—Mr. Schoenborn's counsel will invite Ms. Pifer's counsel to assist in preparing and presenting Ms. Pifer's case on damages.  Intervention as a party in this action, however, is wholly inappropriate.

If <u>ever</u> Mr. Schoenborn breaches his fiduciary duties, Ms. Pifer will be more than welcome—and indeed, <u>should</u>—take all steps to redress such breaches and/or seek his removal as personal representative.  Intervention, however, is <u>not</u> the proper vehicle.

## **CONCLUSION AND REQUEST FOR ORAL HEARING**

WHEREFORE, for the foregoing reasons, the motion to intervene should be denied.

Plaintiff requests an oral hearing on this motion pursuant to Local Civil Rule 7(f).

Respectfully submitted,

*/s/ Peter C. Grenier*

By:    Peter C. Grenier (D.C. Bar No. 418570)
       Bode & Grenier, L.L.P.
       1150 Connecticut Avenue, N.W.
       Ninth Floor
       Washington, D.C.  20036
       (202) 828-4100
       (202) 828-4130 (fax)

       *Counsel for Plaintiff*

Dated: July 26, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of July 2007, I served a true and accurate copy of the foregoing Plaintiff's Memorandum of Points and Authorities in Opposition to Kimberly Pifer's Motion to Intervene, the Declaration of Peter C. Grenier in Support, and proposed Order upon:

<u>Via United States First Class Mail</u>

William P. Lightfoot, Esq.
Paulette E. Chapman, Esq.
Kelly J. Fisher, Esq.
KOONZ, McKENNEY, JOHNSON,
DePAOLIS & LIGHTFOOT, L.L.P.
2001 Pennsylvania Avenue, N.W.
Suite 450
Washington, D.C. 20006

*Counsel for Proposed Intervenor Kimberly Pifer*

- and -

<u>Via Electronic Case Filing</u>

Kathleen A. Carey, Esq.
Jeffrey C. Seaman, Esq.
Washington Metropolitan Area Transit Authority
Assistant General Counsel
600 5th Street, N.W. Room 2B-11
Washington, D.C. 20001

*Counsel for Defendant WMATA*

*/s/ Peter C. Grenier*
       Peter C. Grenier

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division

|  |  |  |
|---|---|---|
| **GREGORY E. SCHOENBORN,**<br>**Individually and as Personal**<br>**Representative of the Estate of**<br>**Martha Stringer Schoenborn, Deceased**<br><br>**Plaintiff,**<br><br>v.<br><br>**WASHINGTON METROPOLITAN**<br>**AREA TRANSIT AUTHORITY**<br><br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO. 07-CV-544(RMU/JMF) |

DECLARATION OF PETER C. GRENIER IN SUPPORT OF
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO KIMBERLY PIFER'S MOTION TO INTERVENE

Declarant, Peter C. Grenier, hereby states as follows:

1.      My name is Peter C. Grenier, I am over twenty-one years of age and have personal knowledge of the facts stated herein. I make this declaration for the purpose of setting forth facts and identifying documents in support of Plaintiff's Memorandum of Points and Authorities in Opposition to Kimberly Pifer's Motion to Intervene.

2.      I am admitted to the practice of law in the state and/or federal courts of the District of Columbia, Virginia, Maryland, Colorado, and Oklahoma. I represent the plaintiff, Gregory E. Schoenborn, in the above captioned litigation.

3.      I am a named partner at the law firm of Bode & Grenier, L.L.P. On or about March 6, 2007, our firm was retained by Mr. Schoenborn to handle civil claims arising out of his wife's death.

4.      Within several days of being retained, and at Mr. Schoenborn's request, I spoke on the telephone with Kimberly Pifer at length regarding the potential civil claims, our intention to initiate this action, and generally discussed with her the fact that she is a statutory beneficiary.

5.      On or about March 19, 2007, Mr. Schoenborn was appointed the administrator of the Estate of Martha Schoenborn.

6.      On or about March 19, 2007, I sent a copy of the complaint that was filed in this action to Ms. Pifer.  Attached hereto as **Exhibit 1** is a true and accurate copy of the cover letter, dated March 19, 2007, from myself to Ms. Pifer that accompanied the complaint.  The letter also refers to our earlier conversation and offers to answer any questions Ms. Pifer might have.

7.      Attached hereto as **Exhibit 2** is a true and accurate copy of a letter, dated March 27, 2007, from Julie H. Heiden to myself.

8.      I spoke on the telephone with Ms. Heiden on or about April 5, 2007, and again on or about April 11, 2007.  During these conversations, Ms. Heiden had only extremely positive things to say about the manner in which this firm was handling this litigation, and never expressed any concern about any lack of protection of Ms. Pifer's interests.  She simply stated that Ms. Pifer wanted to become a co-administrator.

9.      Attached hereto as **Exhibit 3** is a true and accurate copy of a letter, dated April 11, 2007, from myself to Ms. Heiden memorializing our April 11, 2007 conversation.

10.      Attached hereto as **Exhibit 4** is a true and accurate copy of a letter, dated April 12, 2007, from Ms. Heiden to myself.

11.      Attached hereto as **Exhibit 5** is a true and accurate copy of a letter, dated April 12, 2007, from myself to Ms. Heiden.  Ms. Heiden had stated that the sole reason for Ms. Pifer's retention of counsel was to utilize Mr. Lightfoot's supposed "political connections" to bring

about changes in the way the Washington Metropolitan Area Transit Authority runs its Metrobus system

      12.     Attached hereto as **Exhibit 6** is a true and accurate copy of a second letter, dated April 12, 2007, from Ms. Heiden to myself.

      13.     Attached hereto as **Exhibit 7** is a true and accurate copy of the Petition for Appointment as Co-Administrator that was filed by Ms. Heiden in the Circuit Court for the City of Alexandria, Virginia. Nowhere in the Petition did Ms. Pifer ever suggest that Mr. Schoenborn is not adequately protecting her interests, or that my firm was not handling this matter appropriately.

      14.     Attached hereto as **Exhibit 8** is a true and accurate copy of a transcript of the hearing held on June 13, 2007, before Judge Donald M. Haddock in the Circuit Court for the City of Alexandria, Virginia regarding the Petition for Appointment as Co-Administrator.

      I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed by:

Peter C. Grenier

Dated: July 26, 2007

# EXHIBIT 1

# BODE & GRENIER, LLP
### ATTORNEYS AND COUNSELORS

NINTH FLOOR, CONNECTICUT BUILDING
1150 CONNECTICUT AVENUE, NW
WASHINGTON, D.C. 20036-4129
TELEPHONE: 202-828-4100
FACSIMILE: 202-828-4130
www.bode.com

PETER C. GRENIER, ESQ.
Direct Dial: 202-862-4311
pgrenier@bode.com

March 19, 2007

Ms. Kimberly Pifer
2634 Oberlin Road
Raleigh, North Carolina  27608

### Re: Schoenborn v. WMATA, Case: 1:07-cv-544

Dear Kim:

Thank you for taking the time to speak with me earlier this month, albeit under terrible circumstances.  Enclosed please find a copy of the complaint which we filed today.

If you ever have any questions regarding the case, please do not hesitate to contact me.  Again, please accept my sincerest condolences for your loss.

Very truly yours,

Peter C. Grenier

Enclosure
PCG/mkh
cc:    Greg Schoenborn (without enclosure)

# EXHIBIT 2

LAW OFFICES

# KOONZ, MCKENNEY, JOHNSON, DePAOLIS & LIGHTFOOT

A LIMITED LIABILITY PARTNERSHIP

WILLOWWOOD PLAZA 1

10300 EATON PLACE, SUITE 200

FAIRFAX, VIRGINIA 22030

(703) 218-4410

FAX (703) 218-4411

WWW.KOONZ.COM

JOSEPH H. KOONZ, JR. *
ROGER C. JOHNSON *
PETER C. DePAOLIS * °
WILLIAM P. LIGHTFOOT *
MARC FIEDLER *
PAULETTE E. CHAPMAN *
DAVID M. SCHLOSS *
JULIE H. HEIDEN * °
KELLY J. FISHER * °
M. THOMAS McWEENY °
JOSHUA A. DAVENPORT * *

* ADMITTED IN MD.
* ADMITTED IN D.C.
° ADMITTED IN VA.

OF COUNSEL
ANDREW W. COHEN

2001 PENNSYLVANIA AVENUE, N.W.
SUITE 450
WASHINGTON, D.C. 20006
(202) 659-5500
FAX (202) 785-3719

6301 IVY LANE, SUITE 700
GREENBELT, MARYLAND 20770
(301) 345-5700

March 27, 2007

**VIA FACSIMILE (202) 828-4130 & U.S. MAIL**
Peter C. Grenier, Esquire
Bode & Grenier, LLP
1150 Connecticut Ave, NW, 9th Floor
Washington, D.C. 20036

Re:     Martha Stringer Schoenborn

Dear Mr. Grenier:

I have been retained by Kimberly Pifer to represent her interests in connection with Martha Schoenborn's accident related death. It is my understanding that you represent her step-father, Gregory Schoenborn, in connection with the same claim.

I have received a copy of the lawsuit you filed in the United States District Court for the District of Columbia wherein Gregory Schoenborn is listed as the Personal Representative of her Estate. I would like to discuss the status of Mr. Schoenborn's personal representative status at your earliest opportunity as Ms. Pifer desires to be a co-Personal Representative of the Estate. I understand you are out of town for the remainder of this week. Upon your return I would ask you contact me at your earliest opportunity. I am scheduled to be out of town next week but will be accessible through my cell phone at 703-901-4253. If you are unable to reach me, please contact my partner, Bill Lightfoot, who will be working with me on this case. He can be reached at 202-659-5500.

I look forward to speaking with you.

Very truly yours,

Julie H. Heiden

JHH/kc
cc:     Kim Pifer

# EXHIBIT 3

# BODE & GRENIER, LLP
### ATTORNEYS AND COUNSELORS

NINTH FLOOR  CONNECTICUT BUILDING
1150 CONNECTICUT AVENUE, NW
WASHINGTON, D.C. 20036-4129
TELEPHONE: 202-828-4100
FACSIMILE: 202-828-4130
www.bode.com

PETER C. GRENIER, ESQ.
Direct Dial: 202-862-4311
pgrenier@bode.com

April 11, 2007

*VIA FACSIMILE TO (703)218-4411,*
*ORIGINAL VIA FIRST CLASS MAIL*

Julie H. Heiden, Esquire
Koonz, McKenney, Johnson,
   DePaolis & Lightfoot, LLP
10300 Eaton Place, Suite 200
Fairfax, Virginia  22030

> **Re:**   *Martha Stringer Schoenborn*

Dear Ms. Heiden:

I am writing to memorialize our most unpleasant conversation earlier today. Despite your previous statements to the contrary, and in light of our conversation today, it does indeed appear that your law firm wishes – for lack of better terminology – to inject itself into the litigation and/or to "poach" the case away from this firm. Ignoring the ethical implications of such behavior, suffice it to say that I was shocked upon learning of this today. I now better understand why you have repeatedly rejected my gracious offers to keep Kim absolutely in the loop on all developments in the case, without her formally joining as a co-personal representative.  Indeed, you euphemistically and repeatedly stated your client's desire to be "more actively involved in the day-to-day decision making" in the case.  Obviously, I now realize that is all a bunch of nonsense, and a serious display of disingenuousness on your personal part.

I left you a voicemail message earlier today in a wholly non-obligatory effort to continue to keep you apprised of things. Specifically, I told you about my conversation with Kathleen Cary, Esquire, as well as the fact of my having received WMATA's Answer in the case.  I further informed you that, based upon our understanding that a nearby surveillance camera may have caught images surrounding the incident, we had sent a FOIA request to the National Archives.

When we spoke today, you confirmed that, based upon our previous conversation, you informed Kim that (in your view) my firm is doing everything properly and is aggressively pursuing the claims.  Presumably you said this because you believe it to be true – and indeed, it *is* true. You indicated that Kim wants to be involved with respect to seeking non-monetary things, such as changes at WMATA and by the city. You told me that Kim chose your firm due to Mr. Lightfoot's "connections," and you specifically mentioned Mayor Fenty.  I lauded

Julie H. Heiden, Esquire
April 11, 2007
Page 2

whatever political efforts your firm wants to undertake, and again stated how Kim and Greg are unified in their desires to see changes made. I further even offered to confirm in writing that we would not even *submit* a proposed settlement package to WMATA unless it were first reviewed by Kim. I continue to fail to see why Kim – herself the tragic victim of the loss of her mother -- needs to be a co-personal representative in order to pursue change via political connections.

I then asked you point-blank whether, if Kim became a co-personal representative, she would expect your firm to be directly involved in the litigation. You said yes. I was extremely disappointed by your response, as I had not wanted to believe that in fact you and your client *did* have an ulterior motive in our dealings. In fact, based on our previous conversation, I had repeatedly told Mr. Schoenborn that he should not worry that Kim is attempting something so underhanded.

Be clear. Under Virginia law, Mr. Schoenborn has the unfettered priority as the personal representative. *See, Va. Code Ann. § 64.1-118(A)(2).* If you disagree, I would appreciate your setting forth in writing any reasons therefore. You agreed with my suggestion that any public suggestion of acrimony between our respective clients would likely become a self-fulfilling prophecy of doom with respect to the ultimate outcome of the case. I hope and trust that you and your firm are placing your client's own interests in this regard above those of your wallet. So that there is no misunderstanding, and for many reasons not detailed in this letter, Mr. Schoenborn will not agree to your client joining as a co-personal representative; however, I reiterate my previous offer to continue to keep your client fully apprised to whatever reasonable extent she desires.

Should you and your client determine to seek judicial relief regarding any aspect of the foregoing, I remind you that the costs and fees associated with the defense of such action ultimately come out of the estate itself. I must insist that going forward, you communicate with this office only in writing.

Sincerely,

Peter C. Grenier

PCG/mkh
cc:    Greg Schoenborn

# EXHIBIT 4

LAW OFFICES

## KOONZ, MCKENNEY, JOHNSON, DePAOLIS & LIGHTFOOT

A LIMITED LIABILITY PARTNERSHIP

WILLOWWOOD PLAZA 1
10300 EATON PLACE, SUITE 200
FAIRFAX, VIRGINIA 22030

(703) 218-4410
FAX (703) 218-4411
WWW.KOONZ.COM

JOSEPH H. KOONZ, JR. •
ROGER C. JOHNSON •
PETER C. DePAOLIS •
WILLIAM P. LIGHTFOOT • ◊
MARC FIEDLER •
PAULETTE E. CHAPMAN •
DAVID M. SCHLOSS •
JULIE H. HEIDEN • ◊
KELLY J. FISHER • ◊
M. THOMAS McWEENY •
JOSHUA A. DAVENPORT • •

• ADMITTED IN MD.
• ADMITTED IN D.C.
• ADMITTED IN VA.

OF COUNSEL
ANDREW W. COHEN

2001 PENNSYLVANIA AVENUE, N.W.
SUITE 450
WASHINGTON, D.C. 20006
(202) 659-5500
FAX (202) 785-3719

6301 IVY LANE, SUITE 700
GREENBELT, MARYLAND 20770
(301) 345-5700

April 12, 2007

**VIA FACSIMILE (202) 828-4130 & U.S. MAIL**
Peter C. Grenier, Esquire
Bode & Grenier, LLP
1150 Connecticut Ave, NW, 9th Floor
Washington, D.C. 20036

Re:    Estate of Martha Stringer Schoenborn v.
Washington Metropolitan Area Transit Authority

Dear Mr. Grenier:

You have mischaracterized why Kim has hired our law firm.

Kim wants to be involved in the decision making aspect of this case. Kim is not trying to push Greg out of this litigation and wants Greg to be involved in the process.

Our client wants to be co-personal representative. She has retained us to take the necessary legal action to see that she becomes a legally authorized decision maker in the litigation.

The disparaging remarks made about Kim emphasize the need for her to become co-personal representative and highlights the need for her to become involved to protect her interest.

Should your client choose to voluntarily agree to allow Kim to be co-personal representative, please let me know.

Very truly yours,

Julie H. Heiden

JHH/kc
cc:    Ms. Kim Pifer

# EXHIBIT 5

# BODE & GRENIER, LLP
### ATTORNEYS AND COUNSELORS

NINTH FLOOR, CONNECTICUT BUILDING
1150 CONNECTICUT AVENUE, NW
WASHINGTON, D.C. 20036-4129
TELEPHONE: 202-828-4100
FACSIMILE: 202-828-4130
www.bode.com

PETER C. GRENIER, ESQ.
Direct Dial: 202-862-4311
pgrenier@bode.com

April 12, 2007

*VIA FACSIMILE TO (703)218-4411,*
*ORIGINAL VIA FIRST CLASS MAIL*

Julie H. Heiden, Esquire
Koonz, McKenney, Johnson,
    DePaolis & Lightfoot, LLP
10300 Eaton Place, Suite 200
Fairfax, Virginia 22030

        Re:    *Martha Stringer Schoenborn*

Dear Ms. Heiden:

        I am in receipt of your letter of even date.

        You told me point-blank that the sole reason that Kim retained your firm was because of Mr. Lightfoot's supposed "connections" with Mayor Fenty, for the purpose of trying to effect some sort of political change. While we laud that purpose, it has nothing to do with the fact that our action is against a federal compact agency, namely, WMATA, of which the District of Columbia is a signatory member. I have repeatedly told you that we are happy to keep Kim fully informed, and that we are happy to speak with her at any time she so wishes. Kim had no problem whatsoever with our client's pursuit of this action – her e-mails support this -- and indeed, I had a very pleasant conversation with her, and followed it up with a letter to her and a copy of our lawsuit.

        Ignoring your personal lack of candor – I have no real reason to impute your personal motivations to Kim – I trust and assume that you will more than adequately represent Kim's interests as a beneficiary. Moreover, and needless to say, if this case does somehow resolve short of a trial, and if we are not able informally to determine an appropriate apportionment between Greg and Kim, certainly Kim would have the opportunity to present evidence in a formal proceeding.

        Throughout our dealings you have lauded each and every aspect of what this firm has done. I give you my assurances that we are quite competent and possess the requisite skills to handle the case. Your suggestion that Kim needs to be a co-personal representative in order to "protect her interest" seemingly suggests that we have somehow acted *against* her "interest." Could anything be further from the truth? Did we not specifically list her as a beneficiary in our lawsuit? Have I not voluntarily and unilaterally given you updates? I simply fail to understand

Julie H. Heiden. Esquire
April 12. 2007
Page 2

where you think that we have stumbled in literally any aspect of our handling of this matter. Overall. the answer is clear – it is your law firm that is seeking to benefit from these actions. under the guise of somehow "protecting" Kim's "interests."

Having previously been in your firm's position – namely, representing a statutory beneficiary of a wrongful death/survival action – it never crossed my mind to try to steal a case away from the competent counsel handling the matter. At the appropriate time, I expressed my client's position loudly and clearly.  Certainly, there should reach a time when you will also have that opportunity.

I certainly can not stop someone from filing anything publicly, although I must assume that you will publicly assert that somehow Greg is acting contrary to Kim's interests. Since there exists no such basis, then by definition you will be making frivolous allegations, and we will certainly have to consider seeking all appropriate relief.

Again, I truly hope that your firm will not persist in elevating its own pecuniary interests above those of Kim, whose personal recovery – as well as Greg's – may well suffer if this acrimony sees the light of day.  During our first conversation, you assured me that this will not happen. You have now flip-flopped and are indicating otherwise.

Finally, I have *never* made a disparaging remark about Kim, and I am offended that you suggest otherwise. I feel horribly for what Kim has gone through, and my heart goes out to her for her tragic loss.  Having dealt with her already, I can not for a moment believe her a willing participant in your legal machinations, and assume that you are somehow taking undue advantage of someone who is quite emotionally fragile.  For Kim's sake, I do sincerely hope this is untrue.

I respectfully request that you forward a copy of this letter to Kim directly, and confirm to me in writing that you have done so.

Sincerely,

Peter C. Grenier

PCG/rs
cc:   Greg Schoenborn

# EXHIBIT 6

LAW OFFICES

## KOONZ, McKENNEY, JOHNSON, DePAOLIS & LIGHTFOOT

A LIMITED LIABILITY PARTNERSHIP

WILLOWWOOD PLAZA 1
10300 EATON PLACE, SUITE 200
FAIRFAX, VIRGINIA 22030

(703) 218-4410
FAX (703) 218-4411
WWW.KOONZ.COM

JOSEPH H. KOONZ, JR. •
ROGER C. JOHNSON •
PETER C. DePAOLIS • ○
WILLIAM P. LIGHTFOOT •
MARC FIEDLER •
PAULETTE E. CHAPMAN •
DAVID M. SCHLOSS •
JULIE H. HEIDEN • ○
KELLY J. FISHER • ○
M. THOMAS McWEENY ○
JOSHUA A. DAVENPORT • ○

• ADMITTED IN MD.
• ADMITTED IN D.C.
○ ADMITTED IN VA.

OF COUNSEL
ANDREW W. COHEN

2001 PENNSYLVANIA AVENUE, N.W.
SUITE 450
WASHINGTON, D.C. 20006
(202) 659-5500
FAX (202) 785-3719

6301 IVY LANE, SUITE 700
GREENBELT, MARYLAND 20770
(301) 345-5700

April 12, 2007

**VIA FACSIMILE (202) 828-4130 & U.S. MAIL**
Peter C. Grenier, Esquire
Bode & Grenier, LLP
1150 Connecticut Ave, NW, 9th Floor
Washington, D.C. 20036

Re:    Estate of Martha Stringer Schoenborn v.
Washington Metropolitan Area Transit Authority

Mr. Grenier:

Thank you for your letter. You are clearly misinterpreting the actions of this law firm and the actions of Ms. Pifer. As I have indicated to you from the beginning, Ms. Pifer desires to be an active participate in the prosecution of this lawsuit. She does not wish to replace Mr. Schoenborn as a personal representative. Rather, she wishes to amicably join Mr. Schoenborn as co-personal representatives so that they can work together in the prosecution of this claim.

Likewise, our firm is not trying to "steal a case away from competent counsel". We are confident that as Ms. Pifer's counsel in this matter we can work with your law firm as this matter is pursued.

I regret you have interpreted any of my actions as anything other than genuine efforts to develop a working relationship between our respective clients and our respective law firms.

As requested in your letter, Ms. Pifer has been made aware of the contents of your letter and a copy will be forwarded to her this evening.

Very truly yours,

Julie H. Heiden

JHH/kc
cc:    Ms. Kim Pifer

# EXHIBIT 7

BEFORE THE CIRCUIT COURT FOR THE CITY OF ALEXANDRIA, VIRGINIA

IN THE MATTER OF THE ESTATE OF ) 
MARTHA STRINGER SCHOENBORN )
deceased )
                                     )       Fiduciary No. CW07001097
                                     )

## PETITION FOR APPOINTMENT AS CO-ADMINISTRATOR

COMES NOW KIM PIFER ("Petitioner"), daughter of MARTHA STRINGER SCHOENBORN ("Decedent"), by counsel, and moves this Court to appoint her as co-administrator of the ESTATE OF MARTHA STRINGER SCHOENBORN. In support of her motion, she states, by counsel, the following:

1.       Decedent was a resident of the City of Alexandria, Virginia and died on February 14, 2007 when she was struck and killed by a Metrobus in Washington, DC.

2.       Decedent died intestate.

3.       At the time of her death, Decedent was married to GREGORY E. SCHOENBORN.

4.       Petitioner was Decedent's only child and is not a child of GREGORY E. SCHOENBORN.

5.       Pursuant to §§ 64.1-1 and 64.1-11 of the Code of Virginia, as amended, two-thirds of Decedent's estate passes to Petitioner, Decedent's only child, and the remaining one-third of the estate passes to Decedent's surviving spouse.

6.       GREGORY SCHOENBORN was appointed administrator of Decedent's estate on March 19, 2007.

7.       § 64.1-118.A.2. of the Code of Virginia, as amended, provides that the clerk may grant administration to the first distributee who applies after thirty days have passed since the intestate's death. However, if during the first thirty days following the intestate's death, more than one distributee notifies the clerk of an intent to qualify as administrator, the clerk shall not appoint any distributee until the clerk has given all such distributees an opportunity to be heard.

8.       Unaware of her right to qualify as administrator, Petitioner did not provide the requisite notification during the first thirty days after Decedent's death. Had Petitioner been aware of the foregoing fact, she would have provided notification of her intent to qualify and would have had an opportunity to be heard.

LAW OFFICES
KOONZ, McKENNEY,
JOHNSON, DePAOLIS
& LIGHTFOOT
YELLOWWOOD PLAZA 1
SUITE 200
10300 EATON PLACE
FAIRFAX, VA 22030
(703) 218-4410

9.     GREGORY SCHOENBORN filed a lawsuit in the United States District Court for the District Of Columbia on March 19, 2007, seeking $100 million in damages from the Washington Metropolitan Area Transit Authority (WMATA) for the wrongful death of Decedent.

10.    Petitioner seeks to be named co-administrator of Decedent's estate so that she may actively participate as a decision maker in the prosecution of the wrongful death claim against WMATA.

11.    As the only child and majority beneficiary of Decedent's estate, Petitioner is a suitable person to whom to grant a right of administration of Decedent's estate.

12.    Pursuant to § 64.1-118.A.5. of the Code of Virginia, as amended, the court has discretion to appoint administrators as the court deems most appropriate and in the best interests of an intestate's estate.

13.    GREGORY E. SCHOENBORN, administrator of the captioned estate, will be served a copy of this Petition and proposed Order.

NOW THEREFORE, Petitioner moves this court to appoint her as co-administrator of the ESTATE OF MARTHA STRINGER SCHOENBORN.

BY COUNSEL
KIM PIFER

Julie H. Heiden (VSB No. 34748)
*Koonz, McKenney, Johnson, DePaolis & Lightfoot*
10300 Eaton Place, Suite 200
Fairfax, VA 22030
T:     703-218-4410
F:     703-218-4411
E:     jheiden@koonz.com

## CERTIFICATE OF MAILING

I certify that a copy of this Petition, and the proposed Order, were sent by Federal Express, next day delivery, to the following persons on April 17, 2007:

1.     Gregory E. Schoenborn, 3225 Ravensworth Place, Alexandria, VA 22302.

Julie H. Heiden

LAW OFFICES
KOONZ, MCKENNEY,
JOHNSON, DEPAOLIS
& LIGHTFOOT
ILLOWWOOD PLAZA I
SUITE 200
0300 EATON PLACE
FAIRFAX, VA 22030

(703) 218-4410

## BEFORE THE CIRCUIT COURT FOR THE CITY OF ALEXANDRIA, VIRGINIA

IN THE MATTER OF THE ESTATE OF    )
MARTHA STRINGER SCHOENBORN    )
deceased    )
    )
    )    Fiduciary No. CW07001097
    )

### ORDER

THIS MATTER came on this day to be heard on the Petition of KIM PIFER ("Petitioner"), daughter of MARTHA STRINGER SCHOENBORN, by counsel, to be appointed co-administrator of the ESTATE OF MARTHA STRINGER SCHOENBORN.

IT APPEARING TO THE COURT, that the appointment sought, pursuant to § 64.1-118 of the Code of Virginia, as amended, is in the best interests of Decedent's estate and is appropriate in these circumstances, given Petitioner's relationship to the Decedent.

IT FURTHER APPEARING TO THE COURT, that GREGORY E. SCHOENBORN, administrator of the captioned estate, was served with a copy of these filings in a timely manner, and it is

ADJUDGED, ORDERED, and DECREED, that KIM PIFER is hereby appointed co-administrator of the ESTATE OF MARTHA STRINGER SCHOENBORN.

ENTERED this _____ day of April, 2007.

_____<br>
Judge

LAW OFFICES
KOONZ, MCKENNEY,
JOHNSON, DEPAOLIS
& LIGHTFOOT
WILLOWWOOD PLAZA I
SUITE 200
10300 EATON PLACE
FAIRFAX, VA 22030

(703) 218-4410

-1-

I ASK FOR THIS:

Julie H. Heiden  VSB No. 34748
*Koonz, McKenney, Johnson, DePaolis & Lightfoot*
10300 Eaton Place, Suite 200
Fairfax, VA 22030
T:     703-218-4410
F:     703-218-4411
E:     jheiden@koonz.com


SEEN:


Gregory E. Schoenborn
3225 Ravensworth Place
Alexandria, VA 22302

LAW OFFICES
KOONZ, McKENNEY,
JOHNSON, DePaolis
& LIGHTFOOT
WILLOWWOOD PLAZA I
SUITE 200
10300 EATON PLACE
FAIRFAX, VA 22030

(703) 218-4410

-2-

## BEFORE THE CIRCUIT COURT FOR THE CITY OF ALEXANDRIA, VIRGINIA

IN THE MATTER OF THE ESTATE OF    )
MARTHA STRINGER SCHOENBORN    )
deceased    )
   )
   )     Fiduciary No. CW07001097
   )

### <u>NOTICE</u>

**PLEASE TAKE NOTICE** that on Wednesday, April 25, 2007, at 10:00 a.m., or as soon thereafter as counsel may be heard, Kim Pifer's Petition for Appointment as Co-Administrator will be heard in the above-captioned case.

                    **KIM PIFER**
                    By Counsel

**KOONZ, McKENNEY, JOHNSON, DePAOLIS & LIGHTFOOT**

*Julie H. Heiden*

Julie H. Heiden (VSB No. 34748)
*Koonz, McKenney, Johnson, DePaolis & Lightfoot*
10300 Eaton Place, Suite 200
Fairfax, VA 22030
T:    703-218-4410
F:    703-218-4411
E:    jheiden@koonz.com

LAW OFFICES
OONZ, McKENNEY,
JHNSON, DePAOLIS
& LIGHTFOOT
ILLOWWOOD PLAZA 1
SUITE 200
0300 EATON PLACE
AIRFAX, VA 22030

(703) 218-4410

APR-18-2007  16:38        KO⌐  ? MCKENNEY JOHNSON              7032184411    P.03/07

## CERTIFICATE OF SERVICE

CERTIFICATE IS MADE that a copy of the foregoing Notice was sent by Federal Express, next day delivery, to the following persons on April 18, 2007:

Gregory E. Schoenborn
3225 Ravensworth Place
Alexandria, VA 22302

and by facsimile to:

Peter C. Grenier, Esquire
Bode & Grenier, LLP
1150 Connecticut Ave, NW, 9th Floor
Washington, D.C. 20036
(202) 828-4130 – Facsimile

_____
Julie H. Heiden

LAW OFFICES
OONZ, McKENNEY,
HNSON, DePAOLIS
& LIGHTFOOT
LLOWWOOD PLAZA 1
SUITE 200
0300 EATON PLACE
AIRFAX, VA 22030

(703) 218-4410

**EXHIBIT 8**

1

1    VIRGINIA:

2

3        CIRCUIT COURT FOR THE CITY OF ALEXANDRIA

4

5    - - - - - - - - - - - - - x

     THE MATTER OF THE ESTATE     :   Fiduciary No.

6    MARTHA STRINGER SCHOENBORN :   CW07001097

     - - - - - - - - - - - - - x

                                 **ORIGINAL**

7

8                               Alexandria, Virginia

9                               Wednesday, June 13, 2007

10

11

12

13

14            The motion commenced at 9:59 a.m.

15        BEFORE:

16            THE HONORABLE DONALD M. HADDOCK.

17

18

19

20    Job No.: 105703

21    Pages 1 - 10

22    Reported by: Sandria L. Cox


L.A.D.
REPORTING &
DIGITAL VIDEOGRAPHY

1100 Connecticut Avenue, NW • Suite 850, Washington, D.C. 20036
Tel: 202.861.3410 • 800.292.4789 • Fax: 202.861.3425
Web: ladreporting.com • E-mail: lisa@ladreporting.com
Additional Offices: Rockville, MD • Baltimore, MD • Greenbelt, MD • McLean, VA

MOTIONS HEARING IN RE: THE ESTATE OF MARTHA STRINGER SCHOENBORN
CONDUCTED ON WEDNESDAY, JUNE 13, 2007

2

1    APPEARANCES:

2

3         FOR PETITIONER:

4         JULIE H. HEIDEN, ESQUIRE

5         Koonz, McKenney, Johnson, DePaolis & Lightfoot

6         10300 Eaton Place

7         Suite 200

8         Fairfax, Virginia  22030

9         (703) 218-4410

10

11        FOR RESPONDENT:

12        PETER C. GRENIER, ESQUIRE

13        Bode & Grenier, LLP

14        1150 Connecticut Avenue, N.W.

15        9th Floor

16        Washington, D.C.   20036-4192

17        (202) 828-4100

18

19

20

21

22

MOTIONS HEARING IN RE: THE ESTATE OF MARTHA STRINGER SCHOENBORN
CONDUCTED ON WEDNESDAY, JUNE 13, 2007

3

1                    P-R-O-C-E-E-D-I-N-G-S

2              THE COURT:   Okay, we'll take up the

3    Schoenborn matter.

4              What is this all about?

5              MS. HEIDEN:   Good morning, Your Honor.

6    Julie Heiden on behalf of Ms. Pipher.

7              This is my motion requesting that Ms.

8    Pipher be added as a personal representative to the

9    estate of Martha Schoenborn.

10              Currently Greg Schoenborn is serving in

11    that role solely as personal representative and we

12    are seeking to ask that Kimberly become a

13    co-personal representative, as she is the only

14    surviving daughter and the majority beneficiary in

15    the estate.

16              So the bottom line is that that's what

17    we're here for today.  We're asking that she be

18    appointed a co-personal representative.

19              THE COURT:   Okay.  What do you all have

20    to say about it?

21              MR. GRENIER:   Good morning.  Peter

22    Grenier on behalf of Greg Schoenborn.  If the Court

MOTIONS HEARING IN RE: THE ESTATE OF MARTHA STRINGER SCHOENBORN
CONDUCTED ON WEDNESDAY, JUNE 13, 2007

4

1    has had a chance to review our brief, it's pretty

2    much all set forth in there.

3              Mr. Schoenborn's wife Martha was

4    tragically killed on Valentine's Day by a Metro bus

5    at the corner of 7th & Pennsylvania.  She left

6    behind two statutory beneficiaries, her daughter

7    Kim Pipher, who resides in North Carolina, and her

8    husband Greg Schoenborn.

9              During the initial 30-day period Mr.

10   Schoenborn retained this firm on March 6th of 2007

11   and Ms. Pipher was fully aware that Mr. Schoenborn

12   was retaining legal counsel.

13             On March 7 of 2007, according to the

14   Virginia Code Section 64.1-118, subsection a-2 --

15             THE COURT:  Let's not waste a whole lot

16   of time.  Let's get down to the nuts-and-bolts of

17   this thing.

18             MR. GRENIER:  Sure.

19             THE COURT:  You say there's no vacancy,

20   so I can't fill one then.

21             MR. GRENIER:  Exactly.  If you did that,

22   it would be void as a matter of law, and there are

MOTIONS HEARING IN RE: THE ESTATE OF MARTHA STRINGER SCHOENBORN
CONDUCTED ON WEDNESDAY, JUNE 13, 2007

5

1    cases like this before the Supreme Court.

2                 THE COURT:  What do you have to say

3    about the Supreme Court case that says once the

4    position is filled, it's filled, and the Court has

5    no further authority?

6                 MS. HEIDEN:  But we're not -- .  We're

7    asking that she be added to that position.

8                 THE COURT:  I know, but that's the very

9    case that the man has presented.  Have you read

10   this --

11                MS. HEIDEN:  I have read the Bowling

12   case, Your Honor.

13                THE COURT:  Well, I mean, what about

14   that don't you understand?

15                MS. HEIDEN:  I read the case.

16                THE COURT:  What don't I understand?

17                MS. HEIDEN:  Unfortunately I can't point

18   to a point in the case you don't understand.

19                We're just asking in the interest of

20   equitable justice here that Ms. Pipher be added.

21                THE COURT:  I don't think I can do that.

22   I mean --.

MOTIONS HEARING IN RE: THE ESTATE OF MARTHA STRINGER SCHOENBORN
CONDUCTED ON WEDNESDAY, JUNE 13, 2007

6

1       I can't find this dad-gone case just

2   right this minute.  I had it a few minutes ago.

3       Did you keep it?

4       MR. GRENIER:  Do you want the Bowling

5   case, Your Honor?  I have it.

6       THE COURT:  Okay.  Here it is.  I mean,

7   it's just --.

8       You know, Ms. Heiden, I'd do anything in

9   the world I could to help you, but it seems so

10  clear.

11      MR. GRENIER:  Objection.

12      THE COURT:  Ms. Heiden and I have been

13  friends for 40 years, 30 years.

14      MS. HEIDEN:  I appreciate that.

15      THE COURT:  But I don't think -- this

16  case is just so much on all fours.

17      And I really do sympathize with your

18  position.  I mean, if she's the two-thirds

19  beneficiary and he's the one-third beneficiary, it

20  does seem like that, you know, she ought to be able

21  to participate in it.

22      But now he suggests -- and I don't know

MOTIONS HEARING IN RE: THE ESTATE OF MARTHA STRINGER SCHOENBORN
CONDUCTED ON WEDNESDAY, JUNE 13, 2007

7

1    what the D.C. deal is -- that she might be able to

2    intervene over there.

3                MS. HEIDEN:  Yes, we're investigating

4    that option as well, Your Honor.

5                THE COURT:  I don't know whether that's

6    a good idea or a bad idea from either side's point.

7                But I think from this Court's

8    standpoint, I think I'm going to have to deny the

9    motion.

10               MS. HEIDEN:  Okay.  Thank you, Your

11   Honor.  I appreciate it.

12               THE COURT: I didn't mean to keep you

13   all.   I thought maybe there was more to it that I

14   didn't get.

15               MR. GRENIER:  No.

16               THE COURT:  It's just so seldom that the

17   Supreme Court ever tells me anything that I can

18   understand that solves my problem that it came as a

19   shock.

20               MS. HEIDEN:  Yes.  Exactly.

21               THE COURT:  Okay.  Do you have an order

22   here?

MOTIONS HEARING IN RE: THE ESTATE OF MARTHA STRINGER SCHOENBORN
CONDUCTED ON WEDNESDAY, JUNE 13, 2007

8

1      MR. GRENIER:  We have one that we

2  submitted, and I have a copy of it, Your Honor.

3      THE COURT:  I've got one here that says

4  "Order Denying Petition."

5      MR. GRENIER:  That's ours.

6      THE COURT:  Okay.  Ms. Heiden, why don't

7  you take a look at it and marked it as seen and

8  objected to.

9      Now, I would say this to you.  I'm not

10  going to suggest that your client isn't going to be

11  an honorable person and do the best he can, because

12  the bigger he can get, the more he gets kind of

13  deal, so he doesn't have any conflict of interest.

14      MR. GRENIER:  Absolutely, Your Honor.

15  As a fiduciary, his statutory obligation is to her

16  anyway.  And even if we proposed a settlement,

17  we've already informally offered -- and I'll stand

18  by this.  Even despite Your Honor's decision, I've

19  offered and I'll continue to say before this court

20  reporter that before we submit any settlement

21  package at all, we would do it in full consultation

22  with Ms. Pipher through her counsel and will not

MOTIONS HEARING IN RE: THE ESTATE OF MARTHA STRINGER SCHOENBORN
CONDUCTED ON WEDNESDAY, JUNE 13, 2007

9

1  submit anything until she is in full agreement.

2          And that's what we've been saying, Your

3  Honor.

4          THE COURT:  Go ahead, Ms. Heiden, check

5  it out.  You've got this man on the record here

6  now.  Order a copy of the transcript.

7          MS. HEIDEN:  Maybe we could go back to

8  the communications.  It's limited to written at

9  this point.

10          THE COURT:  Okey-doke.

11          MR. GRENIER:  I don't think I endorsed

12  it.

13          THE COURT:  Okay.  We'll, I'm going to

14  give you an opportunity.  I don't think Ms. Heiden

15  did either.  But I did.

16          MS. HEIDEN: Did I just say "objection"?

17  I didn't sign it?

18

19          (Counsel signing document.)

20

21          (Whereupon, the motion was concluded.)

22

MOTIONS HEARING IN RE: THE ESTATE OF MARTHA STRINGER SCHOENBORN
CONDUCTED ON WEDNESDAY, JUNE 13, 2007

10

1        CERTIFICATE OF REPORTER

2        I, Sandria L. Cox, do hereby certify that the

3   foregoing proceedings were taken by me in stenotype

4   and thereafter reduced to transcript under my

5   supervision; that said proceedings are a true

6   record of the testimony given by said witness; that

7   I am neither counsel for, related to, nor employed

8   by any of the parties to the action in which these

9   proceedings were taken; and further, that I am not

10   a relative or employee of any attorney or counsel

11   employed by the parties hereto, nor financially or

12   otherwise interested in the outcome of the action.

13        Given under my hand this 1st day of July,

14   2007.

15

16

17

18        _____

19        Sandria L. Cox

20        Court Reporter

21

22

11

**A**

able 6:20 7:1
Absolutely 8:14
action 10:8,12
added 3:8 5:7,20
ago 6:2
agreement 9:1
ahead 9:4
Alexandria 1:3,8
anyway 8:16
APPEARANCES 2:1
appointed 3:18
appreciate 6:14 7:11
asking 3:17 5:7 5:19
attorney 10:10
authority 5:5
Avenue 2:14
aware 4:11
a-2 4:14
a.m 1:14

**B**

back 9:7
bad 7:6
behalf 3:6,22
beneficiaries 4:6
beneficiary 3:14 6:19,19
best 8:11
bigger 8:12
Bode 2:13
bottom 3:16
Bowling 5:11 6:4
brief 4:1
bus 4:4

**C**

C 2:12
can't 4:20 5:17 6:1
Carolina 4:7
case 5:3,9,12,15 5:18 6:1,5,16
cases 5:1
CERTIFICATE

10:1
certify 10:2
chance 4:1
check 9:4
CIRCUIT 1:3
CITY 1:3
clear 6:10
client 8:10
Code 4:14
commenced 1:14
communications 9:8
concluded 9:21
conflict 8:13
Connecticut 2:14
consultation 8:21
continue 8:19
copy 8:2 9:6
corner 4:5
counsel 4:12 8:22 9:19 10:7,10
court 1:3 3:2,19 3:22 4:15,19 5:1 5:2,3,4,8,13,16 5:21 6:6,12,15 7:5,12,16,17,21 8:3,6,19 9:4,10 9:13 10:20
Court's 7:7
Cox 1:22 10:2,19
co-personal 3:13 3:18
Currently 3:10
CW07001097 1:6

**D**

dad-gone 6:1
daughter 3:14 4:6
day 4:4 10:13
deal 7:1 8:13
decision 8:18
deny 7:8
Denying 8:4
DePaolis 2:5
despite 8:18
didn't 7:12,14 9:17
document 9:19

doesn't 8:13
DONALD 1:16
don't 5:14,16,18 5:21 6:15,22 7:5 8:6 9:11,14
D.C 2:16 7:1

**E**

Eaton 2:6
either 7:6 9:15
employed 10:7,11
employee 10:10
endorsed 9:11
equitable 5:20
ESQUIRE 2:4,12
estate 1:5 3:9,15
Exactly 4:21 7:20

**F**

Fairfax 2:8
fiduciary 1:5 8:15
fill 4:20
filled 5:4,4
financially 10:11
find 6:1
firm 4:10
Floor 2:15
foregoing 10:3
forth 4:2
fours 6:16
friends 6:13
full 8:21 9:1
fully 4:11
further 5:5 10:9

**G**

give 9:14
given 10:6,13
go 9:4,7
going 7:8 8:10,10 9:13
good 3:5,21 7:6
Greg 3:10,22 4:8
Grenier 2:12,13 3:21,22 4:18,21 6:4,11 7:15 8:1 8:5,14 9:11

**H**

H 2:4
HADDOCK 1:16
hand 10:13
Heiden 2:4 3:5,6 5:6,11,15,17 6:8 6:12,14 7:3,10 7:20 8:6 9:4,7 9:14,16
help 6:9
hereto 10:11
he's 6:19
Honor 3:5 5:12 6:5 7:4,11 8:2 8:14 9:3
honorable 1:16 8:11
Honor's 8:18
husband 4:8

**I**

idea 7:6,6
informally 8:17
initial 4:9
interest 5:19 8:13
interested 10:12
intervene 7:2
investigating 7:3
isn't 8:10
it's 4:1 5:4 6:7 7:16 9:8
I'd 6:8
I'll 8:17,19
I'm 7:8 8:9 9:13
I've 8:3,18

**J**

Job 1:20
Johnson 2:5
Julie 2:4 3:6
July 10:13
June 1:9
justice 5:20

**K**

keep 6:3 7:12
killed 4:4
Kim 4:7
Kimberly 3:12
kind 8:12

know 5:8 6:8,20 6:22 7:5
Koonz 2:5

**L**

L 1:22 10:2,19
law 4:22
left 4:5
legal 4:12
Let's 4:15,16
Lightfoot 2:5
limited 9:8
line 3:15
LLP 2:13
look 8:7
lot 4:15

**M**

M 1:16
majority 3:14
man 5:9 9:5
March 4:10,13
marked 8:7
Martha 1:6 3:9 4:3
matter 1:5 3:3 4:22
McKenney 2:5
mean 5:13,22 6:6 6:18 7:12
Metro 4:4
minute 6:2
minutes 6:2
morning 3:5,21
motion 1:14 3:7 7:9 9:21

**N**

neither 10:7
North 4:7
nuts-and-bolts 4:16
N.W 2:14

**O**

objected 8:8
objection 6:11 9:16
obligation 8:15

offered 8:17,19
Okay 3:2,19 6:6
  7:10,21 8:6 9:13
Okey-doke 9:10
once 5:3
one-third 6:19
opportunity 9:14
option 7:4
order 7:21 8:4 9:6
ought 6:20
outcome 10:12

**P**
package 8:21
Pages 1:21
participate 6:21
parties 10:8,11
Pennsylvania 4:5
period 4:9
person 8:11
personal 3:8,11
Peter 2:12 3:21
Petition 8:4
PETITIONER
  2:3
Pipher 3:6,8 4:7
  4:11 5:20 8:22
Place 2:6
point 5:17,18 7:6
  9:9
position 5:4,7
  6:18
presented 5:9
pretty 4:1
problem 7:18
proceedings 10:3
  10:5,9
proposed 8:16
P-R-O-C-E-E-...
  3:1

**R**
read 5:9,11,15
really 6:17
record 9:5 10:6
reduced 10:4
related 10:7
relative 10:10
Reported 1:22

reporter 8:20
  10:1,20
representative
  3:8,11,13,18
requesting 3:7
resides 4:7
RESPONDENT
  2:11
retained 4:10
retaining 4:12
review 4:1
right 6:2
role 3:11

**S**
Sandria 1:22 10:2
  10:19
saying 9:2
says 5:3 8:3
Schoenborn 1:6
  3:3,9,10,22 4:8
  4:10,11
Schoenborn's 4:3
Section 4:14
seeking 3:12
seen 8:7
seldom 7:16
serving 3:10
set 4:2
settlement 8:16
  8:20
she's 6:18
shock 7:19
side's 7:6
sign 9:17
signing 9:19
solely 3:11
solves 7:18
stand 8:17
standpoint 7:8
statutory 4:6 8:15
stenotype 10:3
STRINGER 1:6
submit 8:20 9:1
submitted 8:2
subsection 4:14
suggest 8:10
suggests 6:22

Suite 2:7
supervision 10:5
Supreme 5:1,3
  7:17
Sure 4:18
surviving 3:14
sympathize 6:17

**T**
take 3:2 8:7
taken 10:3,9
tells 7:17
testimony 10:6
Thank 7:10
that's 3:16 5:8 7:5
  8:5 9:2
there's 4:19
thing 4:17
think 5:21 6:15
  7:7,8 9:11,14
thought 7:13
time 4:16
today 3:17
tragically 4:4
transcript 9:6
  10:4
true 10:5
two 4:6
two-thirds 6:18

**U**
understand 5:14
  5:16,18 7:18
Unfortunately
  5:17

**V**
vacancy 4:19
Valentine's 4:4
Virginia 1:1,8 2:8
  4:14
void 4:22

**W**
want 6:4
Washington 2:16
waste 4:15
Wednesday 1:9
we'll 3:2 9:13

we're 3:17,17 5:6
  5:6,19 7:3
we've 8:17 9:2
wife 4:3
witness 10:6
world 6:9
written 9:8

**X**
x 1:5,6

**Y**
years 6:13,13
You've 9:5

**1**
1 1:21
1st 10:13
10 1:21
10300 2:6
105703 1:20
1150 2:14
13 1:9

**2**
200 2:7
20036-4192 2:16
2007 1:9 4:10,13
  10:14
202 2:17
218-4410 2:9
22030 2:8

**3**
30 6:13
30-day 4:9

**4**
40 6:13

**6**
6th 4:10
64.1-118 4:14

**7**
7 4:13
7th 4:5
703 2:9

**8**

828-4100 2:17

**9**
9th 2:15
9:59 1:14

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

| | |
|---|---|
| **GREGORY E. SCHOENBORN,** ) | |
| **Individually and as Personal** ) | |
| **Representative of the Estate of** ) | |
| **Martha Stringer Schoenborn, Deceased** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | CIVIL ACTION NO. 07-CV-544(RMU/JMF) |
| ) | |
| **WASHINGTON METROPOLITAN** ) | |
| **AREA TRANSIT AUTHORITY** ) | |
| ) | |
| **Defendant.** ) | |

## <u>ORDER</u>

Upon consideration of the Partial Consent Motion to Intervene, and the memoranda of points and authorities in support and in opposition, and having determined that the same should be denied, it is hereby:

ORDERED, that the Motion is DENIED.

_____
UNITED STATES DISTRICT COURT JUDGE

Signed this _____ of _____, 2007