UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GREGORY E. SCHOENBORN, as Personal Representative of the Estate of MARTHA S. SCHOENBORN, Deceased, | : : : : | |
| Plaintiff, | : : | Civil Action No.: 07-0544 (RMU) |
| v. | : : | Document No.:  22 |
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, | : : : | |
| Defendant. | : : | |

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART PIFER'S MOTION TO INTERVENE

### I. INTRODUCTION

Kimberly Pifer seeks to intervene in pending wrongful death and survival actions brought by Pifer's step-father, Gregory Schoenborn, following the death of Pifer's mother, Martha Schoenborn. Because Pifer does not have a legally cognizable interest under the Survival Act, D.C. Code § 12-101, the court denies Pifer's request to intervene in that action. But, because Pifer's interest may be adverse to Gregory Schoenborn's interest in seeking compensation under the Wrongful Death Act, D.C. Code § 16-2701, the court grants Pifer's motion to intervene pursuant to the conditions set forth below.

### II. FACTUAL & PROCEDURAL BACKGROUND

On February 14, 2007, Martha Schoenborn was crossing Pennsylvania Avenue and 7th Street N.W., Washington, D.C., when a bus struck and killed her. Compl. ¶¶ 7, 10. The plaintiff asserts that the defendant, Washington Metropolitan Area Transit Authority, owned the bus and

employed the driver, Victor Kolako, who was acting within the scope of his employment at the time of the incident.  Compl. ¶ 9.

On March 19, 2007, Gregory Schoenborn, the husband and legal representative of Martha Schoenborn, filed a wrongful death and survival action against the defendant.  Pifer's motion, filed on August 31, 2007, requests that the court allow her to intervene in these actions.

### III.  ANALYSIS

#### A. Legal Standard for a Motion to Intervene

Federal Rule of Civil Procedure 24 sets forth the requirements for intervention as of right. FED. R. CIV. P. 24; *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003).  Rule 24(a) provides for intervention as of right, stating that

> [u]pon timely application anyone shall be permitted to intervene in an action . . . when a statute of the United States confers an unconditional right to intervene; or . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

*Id.*  As paraphrased by the D.C. Circuit, the rule indicates that an applicant's right to intervene depends on "(1) the timeliness of the motion; (2) whether the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) whether the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) whether the applicant's interest is adequately represented by existing parties." *Fund for Animals*, 322 F.3d at 731; *see also Jones v. Prince George's County, Md.*, 348 F.3d 1014, 1017 (D.C. Cir. 2003) (listing the four elements of Rule 24(a) as "timeliness, interest, impairment of interest, and adequacy of representation").  An

applicant "must satisfy all four elements of the Rule in order to intervene as of right" and must demonstrate that she has standing. *Jones*, 348 F.3d at 1017-19; *Fund for Animals*, 322 F.3d at 731-32.

### B. The Court Denies Pifer's Motion to Intervene in the Survival Action

Pifer requests to intervene because she has an interest in the disposition of the survival action since any recovery would allegedly compensate her for injuries she sustained. Pifer's Mot. to Intervene ("Pifer's Mot.") at 4. The plaintiff, Gregory Schoenborn, retorts that Pifer "misstate[s] the law" in arguing that the Survival Act provides compensation for her personal injuries and insists that she should not be permitted to intervene in this action because she has no legally cognizable interest in the proceeding. Pl.'s Opp'n at 7, 10. The court agrees.

The purpose of the Survival Act, D.C. Code § 12-101, "is to place the decedent's estate in the same position it would have occupied if the decedent's life had not been terminated prematurely. Such an action must be brought by the legal representative of the decedent's estate, and all proceeds recovered by the representative pass to the decedent's estate." *Lewis v. Lewis*, 708 A.2d 249, 252 (D.C. 1998). "[P]roper recovery under the Act is based on the probable net future earnings reduced by the amount [the] deceased would have used to maintain himself and those entitled to recover under the Wrongful Death Act."[1] *Semler v. Psychiatric Inst. of Wash., D.C.*, 575 F.2d 922, 925 (D.C. Cir. 1978). Because the Survival Act compensates the estate for "probable net future earnings," rather than compensating a beneficiary for her injuries, Pifer does not have the requisite legal interest to intervene in this action. *See Hughes ex rel. Coleman v. Pender*, 391 A.2d 259, 261 n.2 (D.C. 1978) (stating that "[t]he Survival Statute does not purport to compensate individual members of the decedent's family for the loss of the economic benefit

---

[1] In 1978, an amendment to the Act allowed recovery for pain and suffering. *See Graves v. United States*, 517 F. Supp. 95, 99 (D.D.C. 1981).

which they might reasonably have expected to receive from the decedent in the form of support, services or contributions during the remainder of his lifetime[; n]or does it seek to compensate family members for the lost incidents of family association or the grief they have suffered" (citing *Runyon v. District of Columbia*, 463 F.2d 1319, 1322 (D.C. Cir. 1972))).  In an effort to support her claim, Pifer conflates her analysis under the Survival Act and Wrongful Death Act, and she cites case law that exclusively applies to the Wrongful Death Act.[2]  *See* Pifer's Mot. at 5-6.  Such a tactic cannot bootstrap Pifer into the survival action in which the sole interest is that of the decedent's estate, which is competently and ably represented by an appointed administrator.  Accordingly, the court denies Pifer's motion to intervene in the survival action.

### C.  The Court Grants Pifer's Motion to Intervene in the Wrongful Death Action

Unlike the Survival Act, which recompenses the estate, the Wrongful Death Act provides that "the jury shall allocate the portion of its verdict payable to the spouse or domestic partner and next of kin, respectively, according to the finding of damage to the spouse or domestic partner and next of kin."  D.C. Code § 16-2701.  Because the damages under the Wrongful Death Act recompense "the spouse or domestic partner and next of kin" and because the plaintiff does not dispute the fact that the motion was timely filed, Pl.'s Opp'n at 11, the court need only address whether Pifer's interest will be impaired if the court denies her motion to intervene and whether Pifer's interest is adequately represented by the parties.  *Fund for Animals*, 322 F.3d at 731.

---

[2]   Pifer's citation to *Jones v. Prince George's County*, 202 F.R.D. 39, 41 (D.D.C. 2001) is inapposite because in that case the applicant sought intervention in a wrongful death action and not a survival action.

4

**1. An Interest Impaired**

"In determining whether a movant's interests will be impaired by an action, the courts in this circuit look to the 'practical consequences' to movant of denying intervention." *Am. Horse Prot. Ass'n, Inc. v. Veneman*, 200 F.R.D. 153, 158 (D.D.C. 2001). Moreover, the court considers "the convenience to the movant of permitting intervention in the present suit as opposed to denying intervention merely because future challenges . . . remain available." *Id.*

Although Pifer may be able to challenge an award in probate court or by suing the plaintiff for breaching his fiduciary duty, these post-hoc remedies provide insufficient protection, due to the difficultly in obtaining such relief. *See Natural Res. Def. Council v. Costle*, 561 F.2d 904, 910 (D.C. Cir. 1977) (recognizing that "it is not enough to deny intervention under 24(a)(2) because applicants may vindicate their interests in some later, albeit more burdensome, litigation"); *Jones v. Fondufe*, 908 A.2d 1161, 1165 (D.C. 2006) (holding that bringing a subsequent claim for breach of fiduciary duty is not a reason to deny intervention).[3] Furthermore, the court acknowledges the convenience to Pifer in intervening at this stage of the proceedings and the potential conservation of scarce judicial resources by foregoing the need for future litigation.[4] *See Am. Horse*, 200 F.R.D. at 159. For these reasons, the court concludes that Pifer's interest would be impaired if not allowed to intervene in the wrongful death action.

---

[3] *See Taylor Publ'g Co. v. Jostens Inc.*, 216 F.3d 465, 487 (5th Cir. 2000) (stating that "damages are difficult to prove in breach of fiduciary duty cases"); *see also Purnell v. Akron*, 925 F.2d 941, 950 (6th Cir. 1991) (determining that the ability to intervene in probate proceedings or bring a suit for breach of a fiduciary duty "do[es] not provide adequate protection" for "obvious reasons" including the inability to present evidence to the jury determining the amount of the award and the risk that the administrator would have already disbursed any such award); *McCord v. Bailey*, 636 F.2d 606, 621 (D.C. Cir. 1980) (acknowledging that a plaintiff "may have a difficult time" proving elements such as motive and state of mind in a breach of fiduciary duty suit).

[4] Although correspondence and briefing submitted to the court indicate a degree of acrimony between opposing counsel, any discord should not slow the wheels of justice. The D.C. Bar's Voluntary Standards for Civility in Professional Conduct calls each lawyer to "treat all participants in the legal process, *including counsel* and their staff, parties, witnesses, judges, and

### 2. Adverse Interests Give Rise to Inadequate Representation

The final element Pifer must prove to intervene is the inadequacy of the plaintiff's representation. Traditionally "[t]his burden is minimal and is met if [the movant] show[s] that representation of [her] interests 'may' be inadequate," *Foster v. Gueory*, 655 F.2d 1319, 1325 (D.C. Cir. 1981), but as here, where a party is charged by law to protect the interest of a nonparty, that "representation will be presumed adequate unless special circumstances are shown," 7C FED. PRAC. & PROC. § 1909.

The plaintiff argues that Pifer's interest is being adequately represented because the plaintiff has "repeatedly committed – both verbally and in writing – that he would keep [] Pifer fully informed about the litigation as it proceeds" and will vigorously advocate on her behalf, even assuring her counsel that she "will be given the opportunity to testify at any trial or hearing." Pl.'s Opp'n at 12. Moreover, the plaintiff avers that he will not "submit – let alone negotiate – a settlement . . . without [] Pifer's consultation and agreement." *Id.* While these actions are certainly in keeping with the plaintiff's fiduciary duties, Pifer notes that tactical decisions regarding evidence would have an impact on the final award and that the allocation of such an award would rest solely on the plaintiff's presentation of evidence. Pifer's Mot. at 4, 8. Because both Pifer and the plaintiff have an interest in maximizing their respective and prospective awards, Pifer concludes that the plaintiff is unable to adequately represent her interests. *Id.* at 11-12. The court agrees.

---

court personnel, in a civil, professional, and courteous manner, at all times and in all communications, whether oral or written." (emphasis added). Discord and disrespect only degrade the legal profession and provide a disservice to clients who deserve (and hopefully demand) much better. Accordingly, the legal profession and this court expect counsel to adhere to a higher standard of civil discourse.

The plaintiff's contentions – that any alleged conflict is "pure fantasy" and that he and Pifer are both seeking "to maximize the amount of damages" – fail to grasp the zero-sum reality in which their conflict resides. Pl.'s Opp'n at 13-15 (incorrectly stating that "Mr. Schoenborn and Ms. Pifer are not competing for a fixed sum of money"). Indeed, the amount recoverable is "customarily determined by first ascertaining the annual share of each [beneficiary] in the deceased's earnings multiplied by the appropriate period of years" not to exceed "the period of the deceased's work-life expectancy." *Runyon*, 463 F.2d at 1322. "The amounts recovered are the future contributions toward the maintenance of the spouse and next of kin that the deceased probably would have made had the act which forms the basis of the actions not occurred." *Id.*; *see Saunders v. Air Fla., Inc.*, 558 F. Supp. 1233, 1235 (D.D.C. 1983) (concluding that pursuant to the D.C. Wrongful Death Act, "the proper recovery is the amount of financial loss suffered by the spouse and next of kin as a result of the decedent's death . . . [and not] for mental suffering, grief, or anguish"). Thus, Pifer and the plaintiff are seeking to recover from a fixed sum of money, and a potential conflict exists with regard to distributing this prospective award. *See Fondufe*, 908 A.2d at 1162, 1164 (determining that "the trial court erred as a matter of law in not finding it possible that [the plaintiff's and the movant's] interests might diverge based on the incorrect assumption that any possible recovery would be by the estate"). Because Pifer has demonstrated that special circumstances demand her interests be represented in the wrongful death action, the court grants Pifer's motion to intervene.[5]

---

[5] The court limits Pifer's intervention to participation in settlement discussion and advocating for Pifer's share of any potential monetary award. *See Atherton v. Casey*, 1992 WL 235894, at *1-3 (E.D. La. Sept. 4, 1992) (recognizing that a nonparty may intervene "solely on one issue"); *cf. Nationwide Mut. Ins. Co. v. Nat'l REO Mgmt.*, 205 F.R.D. 1, 7 (D.D.C. 2000) (holding that "[a] court may place conditions on permissive interventions in order to minimize the delay and prejudice to the existing parties").

## IV.  CONCLUSION

For the foregoing reasons, the court grants in part and denies in part Pifer's motion to intervene.  An order consistent with this Memorandum Opinion is issued this 26th day of November 2007.

RICARDO M. URBINA  
United States District Judge